IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 16-133 (KBJ) |
| | ) | |
| WALTER J. CRUMMY. | ) | |
| | ) | |

## DEFENDANT'S RESPONSE TO GOVERNMENT'S
## MEMORANDUM IN AID OF SENTENCING

In an all too uncommon show of solidarity, both the Government and the Defendant, Walter J. Crummy, largely agree on the sentence the Court should impose when Walt is sentenced on January 12, 2017. The key disagreements are on how the Court should calculate the loss amount for purposes of the Sentencing Guidelines, and on whether a recommended probationary sentence should include a condition of home detention.

Because Walt "was involved in the scheme for a relatively brief period, and he realized a relatively smaller amount of personal gain," "his early debriefing with the government and overall cooperativeness likely contributed to other guilty pleas," has experienced significant collateral financial and professional consequences, and has led an otherwise unassailable life, Walt agrees with the Government's recommendation that his sentence should not include any term of incarceration.[1] He respectfully submits that a sentence of probation, and imposition of a forfeiture order of $105,618, would adequately reflect the seriousness of the offense, promote respect for the law and provide just punishment.

---

[1] Gov't Mem. at 1, ECF No. 15. The Government "acknowledges a downward variance may be appropriate, and recommends that the Defendant be sentenced to 12 months and 1 day of probation," with a term of home detention of at least six months as a condition of probation. *Id.*

The Guidelines dispute is over whether this Court should find that the loss amount under U.S.S.G. § 2B1.1(b) is zero, or whether the loss amount is the full value of the two Coast Guard contracts at issue, despite the Coast Guard having received the services for which it contracted. Should the Court accept the Guideline calculation advanced by Walt, a probationary sentence would fall within the recommended Guideline range. Should the Court accept the Government's calculation on loss, both the Government and Walt agree that a variance from the Guidelines would be appropriate based on the 18 U.S.C. § 3553 factors.

For the reasons set forth below and in Defendant's Sentencing Memorandum, Mr. Crummy respectfully asks that he be sentenced to a term of probation and forfeiture in the amount of $105,618.[2]

## I. THE SENTENCING GUIDELINES REQUIRE LOSS TO BE OFFSET BY THE FAIR MARKET VALUE OF THE SERVICES PROVIDED

As noted in Defendant's Sentencing Memorandum, the Sentencing Guidelines require that this Court calculate Walt's offense level based on a loss reduced by the fair market value of the services rendered to the Government under the two Coast Guard contracts at issue in his plea agreement. Def. Mem. at 4 (citing U.S.S.G. § 2B1.1 cmt. n.3(E)). The Government's contrary arguments in favor of treating loss under the Sentencing Guidelines as the total value of the contracts should be rejected by this Court.

The Government's first argument, that 15 U.S.C. § 632(w) requires this Court to presume loss under U.S.S.G. § 2B1.1(b) as the total amount of the contracts, is addressed at length in Defendant's Sentencing Memorandum. *See* Def. Mem. at 8-10, ECF No. 13. First, § 632(w) was enacted after one of the two contracts was awarded, and thus only applies to one of the

---

[2] We note that on December 12, 2016, Walt paid the agreed upon forfeiture amount to the U.S. Marshalls.

2

contracts. Second, Walt was not charged with an offense under Title 15. Third, § 632(w) is not a sentencing provision, and the Sentencing Commission has declined to amend the Guidelines to incorporate § 632(w) despite the Department of Justice's requests. Moreover, as recently as 2014, the Department of Justice explicitly recognized that absent an amendment incorporating the § 632(w) presumption into the Guidelines, *the proper application* of the Guidelines results in no loss, stating:

> Thus, application of §2B1.1 in these cases will often result in no loss or in a loss amount that includes only re-procurement costs. As a result, a guideline sentence in cases where small business contractors make material false statements to the government regarding their compliance with Federal requirements such as contract eligibility, but where the government suffers no financial loss because it obtains the contracted-for goods or services, will rarely include even a short prison term.

Letter from Department of Justice to Hon. Patti B Saris, U.S. Sentencing Commission, at 10-11 (July 29, 2014). In 2016, the Department again requested that the "Commission should amend §2B1.1 (Theft, Property Destruction, and Fraud) to clarify that the 'government benefits rule' applies to these cases, and to clarify that the 'credits against loss rule' does not." Letter from Department of Justice to Hon. Patti B Saris, U.S. Sentencing Commission, at 20-22 (July 19, 2016). Again, the Commission has declined to change the guidelines to incorporate the § 632(w) presumption.[3] Lastly, even if loss is presumed to be the total value of the contracts at issue, nothing in § 632(w) or the Small Business Administration's ("SBA") implementing regulations prohibits this Court from offsetting that loss by the fair market value of the services per

---

[3] On December 9, 2016, the Sentencing Commission issued its preliminary 2017 "Proposed Amendments to the Sentencing Guidelines," which do not contain any reference to 15 U.S.C. § 632(w) or clarification of its application, despite repeated requests from the Department of Justice to do so. *See generally* Proposed Amendments to the Sentencing Guidelines (Preliminary), *available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20161209_prelim-rf-proposed.pdf.

3

Application Note 3(E).

Next, the Government argues that this Court should apply the Government Benefits Rule, Application Note 3(F)(ii), to calculate the loss under § 2B1.1(b) as the total value of the contracts. Gov't Mem. at 19-21. This argument fails for two reasons. First, the most recent Circuit decision to examine this issue, *Harris v. United States*, held that small business procurement fraud cases are too dissimilar from the "grants, loans, and entitlement program payments" specifically enumerated in the Government Benefits Rule. 821 F.3d 589, 603-04 (5th Cir. 2016). Second, the Third Circuit in *United States v. Nagle*, found that even if the Government Benefit Rule applies to small business fraud cases, courts must still offset that loss by the fair market value of the services provided. 803 F.3d 167, 181-82 (3d. Cir 2015).

Additionally, the Third Circuit addressed three of the cases relied upon by the Government for application of the Government Benefits Rule (*Leahy*, *Bros. Construction Co. of Ohio*, and *Maxwell*) and found them all inapt. *Nagle*, 803 F.3d at 182-83; *see also* Gov't Mem. at 21-25. The Third Circuit noted that two of these cases were decided prior to the addition of Application Note 3(E)(i) to the Guidelines, and therefore did not have "occasion to consider whether Note 3(E)(i) required that the services rendered be credited against the loss," and the third decision simply relied on the other two. *Nagle*, 803 F.3d at 182-83.

The *Nagle* decision also refutes the Government's reliance on *United States v. Giovenco*, 773 F.3d 866, 870-71 (7th Cir. 2014). *See* Gov't Mem. at 23. The Eleventh Circuit in *Giovenco* applied Application Note 3(F)(v) where a defendant misrepresented its disadvantaged business status to obtain set-aside contracts from the city of Chicago. *Giovenco*, 773 F.3d at 871. As the Third Circuit noted, Application Note 3(F)(v) specifically prohibits offsets while the Government Benefit Rule does not, which shows that if this prohibition were to apply to the

4

Government Benefits Rule, the Sentencing Commission could have drafted it that way. *Nagle*, 803 F.3d at 182; *see also United States v. Martin*, 796 F.3d 1101, 1110 (9th Cir. 2015) (finding that the Guidelines' Procurement Fraud Rule applied in a small business fraud case and not the Government Benefits Rule, and also noting that the Seventh Circuit in *Giovenco* had misapplied Application Note 3(F)(v)).

The Government argues that this Court should disregard *Nagle*, but none of its reasons are compelling. The Government asserts that *Nagle* does not apply here because the conduct at issue in *Nagle* preceded the Small Business Jobs Act and the *Nagle* conduct was not under a SBA program. Gov't Mem. at 26-27. This rationale similarly undercuts the cases the Government relies upon, all of which share one or both of these characteristics. Indeed, in the only Circuit decision relied on by the Government regarding SBA fraud the contract at issue was awarded in 2007, before § 632(w) was enacted. *See United States v. Blanchet*, 518 F. App'x 932, 934 (11th Cir. 2013). The other cases the Government cites involved state, local, or Department of Transportation programs. Likewise, the Government's reference to losses by unnamed and illusory victims beyond the Government (*i.e.* those small businesses which the Government claims would have received these contracts but for the scheme) would be impossible for this Court to calculate. *See* Gov't Mem. at 27. Like the Fifth Circuit in *Harris* found, the Coast Guard is "the victim[] in this case," albeit one that suffered no loss cognizable under the sentencing guidelines *as they currently exist* – as opposed to how the Government wishes they were drafted. *See* 821 F.3d. at 606.

The trend in the case law is clear: applying the total value of the contracts at issue without any offset for the value of the services provided is contrary to the Sentencing Guidelines. This Court should follow the same rationale employed by the Fifth, Third, and Ninth Circuits,

5

and determine that, because MCC suffered losses on both Coast Guard contracts at issue here, Walt's loss for the purpose of calculating the Guidelines range is zero. Accordingly, his Guidelines range is 0-6 months, and this Court should impose a term of probation.

## II. PROBATION IS A SUFFICIENT SENTENCE

Although the parties are in agreement that probation is warranted in this case, Walt respectfully disagrees with the Government that a condition of home detention is necessary. As detailed in Defendant's Sentencing Memorandum, Walt takes care of his two grandchildren, one of whom has special needs. He is also an active member of his church community, and hopes to find both employment and additional volunteer work soon. He is a 64 year old man with cancer and other health problems, who, prior to this incident, has lived a life of hard, honest work without any contact with the criminal justice system. There is an extremely low probability of Walt ever reoffending. Further, as the Government acknowledges, Walt "was involved in the scheme for a relatively brief period, and he realized a relatively smaller amount of personal gain." Gov't Mem. at 1. Walt accepts full responsibility for his actions.

Given the personal and economic consequences of Walt's guilty plea—the loss of his job, career, CPA license, and reputation, and payment of over $330,000[4]—a term of probation and forfeiture of $105,618 is sufficient, but not greater than necessary, to satisfy the sentencing factors set forth in 18 U.S.C. § 3553(a).

---

[4] As noted in Defendant's Sentencing Memorandum, Walt's total contributions relate to his forfeiture amount, as well as his ownership interest in the assets of MCC and the involuntary conversion of his shares in Catamount, both of which were used to satisfy the MCC plea agreement. Def. Mem. at 23 n.11. This amount represents the direct economic consequences of Walt's actions, but is well-above any personal gain attributable to his conduct.

6

**III. CONCLUSION**

Walt Crummy accepts full responsibility for his conduct. A sentence of probation would adequately reflect the seriousness of the offense, promote respect for the law, and provide just punishment for Walt, while also recognizing Walt's limited role in the offense conduct and his early cooperation with the Government. Even if this Court were to accept the Government's loss calculation under the Sentencing Guidelines, a downward variance would be appropriate. The significant mitigating factors relating to Walt's offense and his personal, professional, and community background provide compelling support for a sentence of probation. These factors also provide ample justification for this Court to find that home detention is unnecessary. Walt appreciates the Court's consideration of this information.

Respectfully submitted,

Dated: December 20, 2016

/s/ Ralph J. Caccia

Ralph J. Caccia
WILEY REIN LLP
1776 K Street NW
Washington, DC 20006
202.719.7242
rcaccia@wileyrein.com
*Counsel for Walter J. Crummy*